ELECTRONICALLY FILED
COURT OF COMMON PLEAS
Wednesday, June 21, 2023 2:13:49 PM
CASE NUMBER: 2023 CV 03249 Docket ID: 533730573
Mike Foley
CLERK OF COURTS MONTGOMERY COUNTY OHIO

## IN THE COMMON PLEAS COURT OF MONTGOMERY COUNTY, OHIO
## CIVIL DIVISION

| | | |
|---|---|---|
| IUVO LOGISTICS, LLC<br>31 S Main St, Suite 227.<br>Dayton, OH 45402 | * | **CASE NO.** |
| | | **Judge** |
| **Plaintiff,** | * | |
| **v.** | | |
| WILLIAM E. JONES<br>35 Cherokee Dr.<br>Memphis, TN 38111 | * | **VERIFIED COMPLAINT FOR<br>DAMAGES AND INJUNCTIVE<br>RELIEF; JURY DEMAND** |
| | * | |
| **Defendant.** | | |

---

Now comes the Plaintiff, IUVO Logistics, LLC, by and through counsel, for its Verified Complaint for Damages and Injunctive Relief against Defendant William E. Jones, hereby states as follows:

### PARTIES

1.     Plaintiff IUVO Logistics, LLC ("**IUVO**") is an Ohio limited liability company which maintains its principal place of business at 31 S. Main Street, Suite 227, Dayton, Ohio 45402 and is engaged in the business of commercial transportation and freight logistics.

2.     Defendant William E. Jones ("**Jones**") is an individual and former employee of IUVO who resides at 35 Cherokee Dr., Memphis, TN 38111.

## JURISDICTION AND VENUE

3.     This Court has personal jurisdiction over the Defendant, and venue is proper in this Court because Plaintiff is an Ohio Limited Liability Company, with its principal offices located in Montgomery County, Ohio.

4.     Subject matter jurisdiction is proper in this Court because the amount in controversy exceeds $25,000.

## OPERATIVE FACTS

5.     IUVO re-alleges the allegations set forth in paragraphs 1 through 4 as if fully rewritten herein.

6.     Jones was, until July 20, 2022, an employee of IUVO, holding the title of Logistics Manager in the company's 3PL department.

7.     Jones' employment with IUVO began on April 30, 2021, when he signed an offer letter accepting employment with IUVO.

8.     Jones was to be paid an annual salary of $50,000 plus a 10% commission earned on gross profits on accounts identified, cultivated, and closed by Jones.  He was also given a company gas card, healthcare and dental benefits, two weeks paid vacation.

9.     Jones, in his role as Logistics Manager, was privy to proprietary, confidential, trade-secret information of IUVO, including but in no way limited to, client information, customer lists, contract information, and other proprietary details of IUVO's business.

10.     In exchange for the salary and benefits package outlined in paragraph 8, Jones was expected to generate freight and logistics business.  The offer and his continued employment was also contingent upon his agreement to not solicit fellow employees to new

- 2 -

positions outside of IUVO, and to not solicit IUVO's customers ("Non-Solicitation Agreement"). (Employment offer letter and agreement, attached hereto as **Exhibit 1**).

11. The Non-Solicitation Agreement provided as follows:

"During the term of this Agreement and for a period of twelve (12) months following the termination of this Agreement for any reason [Jones] agrees that he … will not directly or indirectly, whether for [Jones'] benefit or the benefit of a third party, solicit, divert, or take away, or attempt to solicit, divert, or take away the business or patronage of any of the clients, customers, or accounts or prospective clients, customers, or accounts of IUVO. [Jones] further agrees that he … will not, for the period specified in this paragraph; (1) directly or indirectly contact any of the clients, customers, or accounts or prospective clients, customer, or accounts of IUVO regarding the Employee's terminated relationship with IUVO or regarding [Jones'] subsequent employment or work; or (2) do business by or on behalf of a competitor of IUVO in any way with any entity covered by this paragraph.   This section shall apply to all clients, customers, and accounts of IUVO, regardless of whether the Employee first introduced or established the relationship on IUVO's behalf.  In exchange for Employee's non solicitation obligations contained in this section, IUVO will continue to pay applicable commission rate for all clients personally established by the Employee for a period of one (1) month following the termination of this agreement for any reason." (Exhibit 1).

12. Before signing the Agreement, IUVO gave Jones an opportunity to establish that he brought his own customers to IUVO, and exempting those clients from the Non-Solicitation Agreement.  The Agreement provides that:

"All clients, customers, prospective clients or vendors listed in Exhibit A shall be exempt from the non-solicitation.  It is [Jones'] responsibility to submit Exhibit A at the time this Agreement is executed.  [Jones] shall be limited to twenty (20) accounts that can be listed in Exhibit A.  For Exhibit A to be binding it must be signed by IUVO and counter-signed by [Jones].  If there is no Exhibit A to this Agreement executed by both parties, then there are no exempt accounts."

13. Both parties executed the Agreement, and attached Exhibit A which was blank. As a result, there were no exempt accounts.

14. Jones began his employment as a Logistics Manager on April 30, 2021.

15. Jones was responsible for contacting companies who needed freight moved throughout the United States, and then servicing those clients on behalf of IUVO to further IUVO's business.

- 3 -

16.     Jones was given access to IUVO's proprietary and confidential systems and client database which contained contact information, and other data used by IUVO to search for new clients and service the client and maintain the client relationship.

17.     In 2022, Jones was promoted to 3PL Operations Supervisor. His daily duties included, but were not limited to, outside sales, customer service, asset integration, coordination with freight carriers, and recruiting.

18.     By all accounts, Jones was thriving in his job, and helping IUVO meet its revenue goals. Jones was paid for these efforts in accordance with the parties' Agreement.

19.     On July 10, 2022, Jones abruptly announced he was leaving IUVO.

20.     After his departure, sales to IUVO's customers who Jones was responsible for servicing plummeted. For example, for IUVO's top 5 customers serviced by Jones, revenue for January 2022 to June 2022 was $861,123.00. For the remainder of 2022, after Jones' departure, that revenue was $24,345.

21.     Net margin revenue experienced a similar decrease for accounts serviced by Jones. From January to June 2022, net margin revenue for Jones' accounts was $96,488.34. From July 2022 to December 2022 the net margins revenue was $2,150.00.

22.     Further aggravating matters, at the time of Jones' abrupt departure, IUVO was in advanced discussions with buyers for a sale of the Company.

23.     When Jones left, and took customers with him, IUVO's cashflow decreased dramatically, and caused potential buyers to downgrade offers, ultimately leading to failure of sale negotiations.

24.     Upon and information belief, before and immediately following his resignation, Jones solicited IUVO's customers in direct contravention of the Agreement.

- 4 -

25.   Upon information and belief, Jones is in possession of IUVO's trade secrets, including but not limited to client information, customer lists, contract information, and other proprietary details of IUVO's business.

26.   All of the above is in direct violation of the Agreement and/or Ohio law.

## COUNT ONE
### (Breach of Contract)

27.   IUVO re-alleges the allegations set forth in paragraphs 1 through 26 as if fully rewritten herein.

28.   Jones violated the Non-Solicitation Agreement as set forth more fully above, by including but not limited to, contacting IUVO customers and persuading them to follow him to a direct competitor of IUVO.

29.   Jones' affirmative and intentional actions have directly and irreparably harmed IUVO's business, costing IUVO valued customers, and harming IUVO's business while it was in discussions with potential buyers.

30.   Jones' affirmative and intentional actions constitute a breach of the Agreement resulting in damages to IUVO in excess of $25,000.00, including lost revenue, damage to business reputation, loss of business opportunity, attorneys' fees and other damages to be presented at trial.

## COUNT TWO
### (Conversion)

31.   IUVO re-alleges the allegations set forth in paragraphs 1 through 30 as if fully rewritten herein.

32.   Upon information and belief, Jones is currently in possession of IUVO's proprietary and confidential information and trade secrets, including but not limited to, property, client lists, and other information, in violation of IUVO's rights therein.

BRUNS, CONNELL, VOLLMAR & ARMSTRONG, LLC
ATTORNEYS AT LAW

33.     As such, Jones is in wrongful possession of the above referenced property and information, knowing same rightfully belongs to IUVO.

34.     As a direct and proximate result of Jones' wrongful, knowing, and willful possession and conversion of IUVO's property as described above, IUVO has been damaged in an amount yet to be determined, but not less than $25,000 plus interest, punitive damages, and attorneys' fees.

## COUNT THREE
### (Breach of Duty of Loyalty)

35.     IUVO re-alleges the allegations set forth in paragraphs 1 through 34 as if fully rewritten herein.

36.     Jones owed IUVO a duty of loyalty as employee of IUVO. This duty obligated him to carry out their job responsibilities in good faith and not act to the detriment of IUVO.

37.     This duty of loyalty also prohibited him from competing with IUVO while still working for IUVO, including but not limited to, soliciting IUVO employees to leave IUVO; using IUVO's time, facilities, and confidential information to launch their competing business; using their positions of authority to the detriment of IUVO; and soliciting IUVO's customers and suppliers.

38.     As set forth more fully above, Jones breached his duties of loyalty to IUVO. Upon information and belief, Jones solicited IUVO customers to become customers of IUVO competitors while still employed at IUVO.

39.     All of the foregoing actions have resulted in damages to IUVO in excess of $25,000.00, including lost revenue, damage to business reputation, attorneys' fees and other damages to be presented at trial.

- 6 -

## COUNT FOUR
### (Misappropriation of Trade Secrets – R.C. § 1333.61 et seq.)

40.     IUVO re-alleges the allegations set forth in paragraphs 1 through 39 as if fully rewritten herein.

41.     Jones had access to and acquired confidential and proprietary information belonging to IUVO under circumstances giving rise to a duty to maintain the secrecy of this information and limit its use for the benefit of only IUVO.

42.     At all relevant times, Jones owed IUVO duties of confidentiality and loyalty under the common law. Jones also owed a contractual duty of confidentiality to IUVO under the terms of the Agreement, as applicable.

43.     IUVO's confidential and proprietary information relating to its transportation and logistics business includes but is not limited to client information, customer lists, contract information, and other proprietary details of IUVO's business.

44.     IUVO intended to keep this information confidential and has made reasonable efforts under the circumstances to maintain the secrecy of the information, including by limiting access to this information to those needing to know the information.

45.     IUVO's confidential and proprietary information relating to its transportation and logistics business had independent economic value to IUVO because it was not generally known or readily ascertainable by persons outside of IUVO. IUVO uses this information to maintain and grow its business.

46.     Jones knew or should have known that information, including customers solicited from IUVO, was IUVO's confidential and proprietary information.

- 7 -

47.　For his own benefit, Jones used and/or disclosed or will inevitably use and/or disclose such information without the express or implied consent of IUVO. Such use or disclosure constitutes misappropriation of trade secrets.

48.　As a direct and proximate result of Defendants' misappropriation of trade secrets, IUVO has been damaged in an amount to be determined at trial, but in any event in excess of $25,000. In addition, IUVO has suffered irreparable harm and will continue to suffer irreparable harm unless Defendants' conduct is enjoined by this Court.

49.　Defendants' conduct as alleged above was willful and malicious, entitling IUVO to exemplary damages and attorneys' fees.

## COUNT SIX
### (Tortious Interference with Contract and/or Business Opportunity)

50.　IUVO re-alleges the allegations set forth in paragraphs 1 through 49 as if fully rewritten herein.

51.　Jones was a senior employee of IUVO, as more fully described above, and as such they had access to proprietary trade secrets of IUVO, including, but not limited to, lists and contact information of current and prospective IUVO customers.

52.　Jones knew that by taking this information and using it to his own advantage, he was wrongfully misappropriating trade secrets of IUVO.

53.　Jones used the trade secrets misappropriated from IUVO to induce current and potential customers of IUVO to breach their contractual duties to IUVO, and/or to discontinue a business relationship with IUVO.

54.　Jones did not have any privilege to undertake these wrongful actions.

55.　As a direct and proximate result of Defendant's interference with IUVO's business, including its relationships with its current and potential customers, IUVO has been

- 8 -

damaged in an amount yet to be determined, but not less than $25,000 plus interest, punitive damages and attorney fees.

**WHEREFORE**, Plaintiff IUVO Logistics, LLC requests judgment against Defendants William E. Jones, as follows:

A.     That a permanent injunction issue ordering Defendants to return all IUVO trade secrets to IUVO, to permanently restrict Defendant, his agents, servants, employers, successors, and assigns from using IUVO trade secrets in any way, and further enjoining Defendant Jones from continuing to breach the Confidentiality and Non-Competition Agreement he entered into with IUVO;

B.     That Defendant be required to account for and produce all information taken from IUVO, to return the same to IUVO, and to certify the destruction of any and all copies of the same in their possession;

C.     Damages on Count One in an amount in excess of $25,000, plus interest, attorneys' fees, and costs to be determined at trial;

D.     Damages on Count Two in an amount in excess of $25,000, plus interest, and costs to be determined at trial;

E.     Damages on Count Three in an amount in excess of $25,000, plus interest, and costs to be determined at trial;

F.     Damages on Count Four in an amount in excess of $25,000, plus interest, and costs to be determined at trial;

G.     Damages on Count Five in an amount in excess of $25,000, plus interest, and costs to be determined at trial;

H.     Damages on Count Six in an amount in excess of $25,000, plus interest, and costs to be determined at trial;

I.     Prejudgment interest and post-judgment interest as allowed by law;

J.     Costs and attorneys' fees as allowed by law; and

K.     Such further relief as this Court deems appropriate.

BRUNS, CONNELL, VOLLMAR & ARMSTRONG, LLC
ATTORNEYS AT LAW

Respectfully submitted,

*/s/ Kevin C. Connell*

---

Kevin C. Connell (0063817)
Adam C. Armstrong (0079178)
BRUNS, CONNELL, VOLLMAR
& ARMSTRONG
40 N. Main Street, Suite 2010
Dayton, OH 45423
Phone: (937) 999-6312
Fax: (937) 999-6290
kconnell@bcvalaw.com
aarmstrong@bcvalaw.com

*Attorneys for IUVO Logistics, LLC*

## JURY DEMAND

To the extent any issues are subject to trial by jury, Plaintiff demands the same.

/s/ Kevin C. Connell

---

Kevin C. Connell (0063817)

## VERIFICATION

I, David White verify under the penalty of perjury that I am the owner and President of IUVO Logistics, LLC, an Ohio limited liability company, that I am personally aware of the facts regarding this matter, and that the facts set forth foregoing Verified Complaint are true and correct to the best of my knowledge, information and belief.

David White